UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------x
LOFTED COFFEE, LLC,
a New York Limited Liability Company,                    16 Civ. 2146

    Plaintiff,                                             **COMPLAINT**
                                                                                     (Jury Demand)

    v.

LOFTY COFFEE, Inc.,
a California corporation,

    Defendant.

-----------------------------------------------------x

## COMPLAINT FOR DECLARATORY JUDGMENT

Lofted Coffee, LLC, by and through its attorneys, alleges the following:

### PARTIES

1. Plaintiff Lofted Coffee, LLC ("Plaintiff") is a Limited Liability Company organized under the laws of the State of New York with its principal place of business in Brooklyn, New York.

2. Plaintiff roasts coffee in an approximately 1000-square-foot commercial loft.

3. Plaintiff sells the coffee wholesale to 24 cafés who resell the coffee by the bag.

4. Defendant Lofty Coffee, Inc. ("Defendant"), is a corporation organized under the laws of the State of California with its with its principal place of business in Encinitas, California. Defendant does business as under the name Lofty Coffee Co.

5. Upon information and belief, Defendant is owned by Eric Myers.

6. Upon information and belief, Eric Myers is married to Alejandra Crisafulli who helps run the company. Ms. Crisafulli's marriage to Mr. Myers and role in the company was reported by the online publication *Scoop LA* on December 17, 2013, available at http://thescoopla.com/5828/alejandra-crisafulli-people-you-should-know-transforming-lives-through-life-coaching.

7. Defendant opened up its first café under the name Lofty Coffee Co. next to a complex known as The Lofts at Moonlight Beach in Encinitas, California.

8. Built in 2008, The Lofts at Moonlight Beach consists of two three-story buildings with 15 two-bedroom residential condos totaling 27,498 square feet and 15 retail suites totaling 13,211 square feet.

9. Upon information and belief, Defendant is named in part after its location next to The Lofts and is a descriptive play on words as "lofty" is an adjective for something very good and deserving to be admired.

**JURISDICTION AND VENUE**

10. This action arises under federal law, 28 U.S.C. § 2201 (Declaratory Judgment Act) and 17 U.S.C. §§ 1051-1127 (Lanham Act, the federal trademark statute).

11. 28 U.S.C. § 2201 states *inter alia*: "In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such."

12. The Court has jurisdiction over this action under 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1338(a) (federal trademarks).

13. An actual case or controversy under these statutes has arisen between the parties because Defendant has repeatedly threatened litigation against Lofted.

14. On March 18, 2015, an attorney representing Defendant, Matthew A. Pequignot, sent a letter via email to Plaintiff on the ground that Defendant believed that Plaintiff's use of the phrase "lofted coffee" is an "infringement of its trademark rights."

15. According to an article published online in the *San Diego Source*, Matthew Pequignot Legal Services and Defendant were both tenants in the Lofts at Moonlight Beach in 2013. The February 14, 2013 article in the *San Diego Source* is available at http://www.sddt.com/News/article.cfm?SourceCode 20130214tda#.Vxvld2SDFBc.

16. Mr. Pequignot's letterhead on his March 18, 2015, stated he was part of the firm "Pequignot & Myers LLC."

17. As alleged above, Defendant Lofty Coffee, Inc. is owned by Eric Myers.

18. According to Pequignot & Myers LLC's current website, the named partner Myers refers to Geoffrey R. Myers who retired from the practice of law in 2005.

19. Upon information and belief, Eric Myers and Geoffrey R. Myers are members of the same family.

20. On August 17, 2015, Defendant's attorney contact Plaintiff via email stating, among other things, "I have been asked by my client to pick this matter up again. Please let me know as my client is anxious to resolve this issue soon."

21. On August 21, 2015, Plaintiff's attorney replied with a letter to Defendant's attorney stating, among other things:

> A review of your client's website indicates that the two Lofty Coffee locations, both of which are in California, exists primarily as a café and meeting place for the community to gather.

> My client, Lofted Coffee, is a small wholesale coffee distributor based out of Brooklyn, New York who has been selling beans since 2012. Lofted does not have any café or retail space and does not serve coffee or food for consumption anywhere on its premises. Lofted also has no wholesale accounts in California . . . .
>
> As you can see from the below image, the brand logo and label for Lofted is an ornate colorful and highly distinctive design which is not likely to be confused with those used by your client. The word "lofted" appears in very small Courier-font underneath.

22. Plaintiff's letter stated there was no evidence of actual confusion in the previous three years.

23. Plaintiff's letter further stated: "Due to the differences between our clients' logos, the targeted and actual consumers, the services offered and geographic distance between our clients' respective locations, it is also our opinion that it is extremely unlikely that any actual confusion will occur in the future."

24. On March 4, 2016, Ms. Crisafulli purchased two bags of coffee from Lofted in New York for delivery in Encinitas, California.

25. Upon information and belief, Ms. Crisafulli was acting as an agent of Defendant and purchased the coffee for the purpose of "manufacturing jurisdiction" in order to initiate the litigation in California.

26. On April 5, 2016, Mr. Myers and a managing member of Plaintiff had a phone call. In the phone call Mr. Myers stated "my hands are tied" and that unless Plaintiff stop using its name, he would soon file a lawsuit.

27. The Federal Rules of Civil Procedure permits a federal court to "exercise personal jurisdiction to the extent of the applicable [State] statutes." Fed. R. Civ. P. 4(k)(1)(A).

28. New York Civil Practice Law and Rules ("CPLR") § 302(a)(1) permits the exercise of jurisdiction over Defendant in this action as it states a court may exercise personal

jurisdiction over a non-domiciliary that "transacts any business within the state." CPLR§ 302(a)(1).

29. CPLR§ 302(a)(1) confers jurisdiction over a defendant when two requirements are met. *First*, the defendant has transacted business in New York, which requires showing a defendant purposefully availed itself of the privilege of conducting activities within New York. *Second*, there must be an "articulable nexus" or "substantial relationship" between the plaintiff's claim and the defendant's transaction in New York.

30. This declaratory judgment action arises out of, or is related to, the Defendant's contacts with New York.

31. As detailed above, Defendant has repeatedly threatened litigation against Plaintiff in a letter and a phone call to a managing member of Plaintiff in New York.

32. There is also substantial nexus between Plaintiff's claim for declaratory judgment of non-infringement and Defendant's recent transaction in the state of New York (*i.e.*, the purchase of coffee from New York for California delivery) as Defendant seeks to impose the burden on Plaintiff of appearing in a California federal court.

33. Venue is proper in this district under 28 U.S.C. §§ 1391(b) as a substantial part of the events giving rise to this declaratory judgment action occurred in the Eastern District of New York.

**PRESENT DISPUTE**

34. Plaintiff roasts approximately 100 pounds of coffee per week out of the Bushwick loft. Lofted sells this coffee to fifteen cafés in Brooklyn, Queens and Manhattan. Plaintiff also sells coffee to nine other cafés in Hudson, New York; Urbana, Illinois; Bristol, Rhode Island; Toronto, Ontario; Cleveland, Ohio; Washington D.C.; and Chantilly, Virginia.

35. The owners of Plaintiff named their company after the fact that they roast their coffee in an approximately 1000-square-foot commercial loft in an industrially zoned area in the heart of Bushwick, Brooklyn.

36. On July 6, 2014, Defendant opened Encinitas Roasting Works.

37. On May 11, 2015, Defendant opened a second café in Solana Beach, California.

38. Federal law does not create trademarks or trademark rights because trademark rights arise through use of a mark in commerce in connection with particular goods and services. The holder of a trademark may use and enforce his mark without federal registration.

39. As a supplement to common-law protection, Congress created a federal trademark-registration system and has provided federal remedies for mark owners against infringement, dilution, and unfair competition with the Act of July 5, 1946, ch. 540, 60 Stat. 427 (Lanham Act) (15 U.S.C. 1051 *et seq.*).

40. A descriptive trademark merely describes some portion of the goods or services to be sold under the mark. A trademark is descriptive if it conveys an immediate idea of the ingredients, qualities or characteristics of the goods. Descriptive trademarks only receive substantial federal protection if they acquire "secondary meaning."

41. Upon information and belief, Lofty Coffee has not acquired a secondary meaning.

42. Whole Foods Market sells coffee by stating: "Bright and bursting with aroma, this blend is roasted to showcase the high mountain zing of some of the most lofty coffee regions in the world." http://www.wholefoodsmarket.com/products/organic-breakfast-blend-ground

43. Apartment Therapy describes a remodeled apartment by stating: "This is such a great spot to pretend you're enjoying a coffee or catching up on a magazine in a hip downtown lofty coffee shop."

6

44. One can purchase a "Lofty Coffee Table" online available at http://www.superamart.com.au/lofty/.

45. Common law trademark rights are limited to the geographic area in which the mark is used.

46. Defendant's use of the phrase "Lofty Coffee" is limited to Southern California.

## CLAIM ONE

(Declaratory Judgment of Non-infringement of Trademarks)

47. Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 46, inclusive.

48. Plaintiffs seeks declaratory judgment from this Court that Plaintiff's use of its name Lofted Coffee does not constitute trademark infringement.

## CLAIM TWO

(Declaratory Judgment that Ms. Crisafulli's purchase of Plaintiff's
Coffee May Not Be Used to Establish Jurisdiction)

49. Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 46, inclusive.

50. Plaintiffs seeks declaratory judgment from this Court that Ms. Crisafulli purchase of Plaintiff's Coffee may not be used to establish personal jurisdiction over Plaintiff.

## PRAYER FOR RELIEF

**WHEREFORE**, Lofted respectfully requests that the Court:

51. Enter judgment according to the declaratory relief sought;

52. Award Plaintiff its costs in this action;

53. Enter such other further relief to which Plaintiff may be entitled as a matter of law

7

or equity, or which the Court determines to be just and proper.

54. Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby demands a jury trial on all issues so triable.

Dated: April 29, 2016

/s/ DK7753

By: _____

David Kasell
Kasell Law Firm
1038 Jackson Ave.,
Long Island City, NY 11101
(718) 404-6668
david@kaselllawfirm.com

Matthew Brian Ortiz
*Pro Hac Vice Admission pending*
Lehman Law Group
Lehman LG LLC
47-39 Vernon Blvd.
Long Island City, NY 11101
(929)-275-16887
matthew@lehmanlawgroup.com