The Honorable Roslynn R. Mauskopf                            January 4, 2017
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

                Re:      <u>Lofted Coffee LLC v. Lofty Coffee Inc., Case 1:16-cv-02146-RRM-CLP</u>

Dear Judge Mauskopf:

       This letter is in response to Plaintiff Lofted Coffee LLC's ("Lofted") letter motion (ECF No. 45) to set aside the default entered on December 13, 2016 (ECF No. 39). Subsequent to Plaintiff's default, Plaintiff has also failed to comply with Judge Pollak's Order (ECF No. 42), dated December 14, 2016, to answer Defendant Lofty Coffee Inc.'s ("Lofty") Requests for Admission (RFAs), served on November 29, 2016, to which answers were due December 30, 2016. *See* Affirmation of Matthew A. Pequignot ("Pequignot Decl."), ¶ 3 and Exhibit A thereto. This additional dilatory conduct should be considered in evaluating Plaintiff's default, and each of Lofty's RFAs should be deemed admitted. Fed. R. Civ. P. 36(a)(3).

       <u>The Legal Standard</u>
       The Second Circuit has established three criteria that district courts must assess in deciding whether to relieve a party from a default: "(1) whether the default was willful; (2) whether setting aside the default would prejudice the adversary; and (3) whether a meritorious defense is presented." *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993) (citations omitted).

       <u>The "Willfulness" Factor</u>
       The Second Circuit has made clear that willfulness in the default context may be shown where the conduct of the litigant is "not satisfactorily explained." *S.E.C. v. McNulty*, 137 F.3d 732, 738-39 (2d Cir. 1998) (finding the defaulting party's *failure to give an explanation* for its conduct as supportive of willfulness) In other words, "willfulness" does not require unequivocal evidence of "intent", and a failure to provide a satisfactory explanation can be deemed to satisfy the willfulness element. *Id.* (citing two Second Circuit cases finding willful defaults where an attorney failed to provide a satisfactory explanation for its conduct); *See also In re Martin-Trigona*, 763 F.2d 503, 505-506 (2d Cir. 1985) (per curiam).

       Lofted's motion to set aside the default (ECF No. 45) appears to rely almost entirely on reasons stated in its letter filed with the Court under seal on November 29, 2016 (ECF No. 35). According to Lofted, "[t]he details underlying Plaintiff's failure to file an answer are under seal (ECF/CM No. 34).[1] Plaintiff respectfully submits that a review of them easily demonstrate [*sic*] that the clerk's entry of default should be set aside." (ECF No. 45, at 3) However, "a review" of Lofted's November 29 letter reveals nothing about the topic of the missed answer deadline or the topic of managing or docketing deadlines generally, or the mistakes or oversight of counsel (in calendaring or otherwise). In other words, Lofted's November 29 letter provides no relevant explanation for its default whatsoever.

       Lofted claims in its motion that the default is attributable to the allegedly "sudden" withdrawal of former counsel Matthew Ortiz. According to Lofted, "plaintiff's failure [to file an answer] is explained [in its November 29 letter] by the reasons for previous attorney's <u>sudden</u> withdraw [*sic*]."

---

[1] The correct ECF No. for Lofted's November 29 letter filed under seal is 35, not 34.

(underlining added) This statement is puzzling (at a minimum), given that the *alleged* reasons for Mr. Ortiz's withdrawal are wholly unrelated to calendaring or docketing issues.[2] As best as can be understood, Lofted appears to be somehow suggesting that Mr Ortiz's "sudden" withdrawal caused Mr. Lehman to be unaware of the deadline. This secondary "argument", however, fails for two reasons.

      First, Mr. Lehman has been involved in this case intimately since day one and has always appeared to Lofty to be acting as something akin to lead counsel. Pequignot Decl., ¶ 4. Most importantly, Mr. Lehman had personal knowledge of the Court's Order, dated October 20, 2016, setting Lofted's answer deadline. Demonstrating this, Mr. Lehman wrote to Lofty's counsel within hours of the Order setting the deadline, *while specifically referencing the Order in his email.* Pequignot Decl., ¶ 5. Moreover, Mr. Lehman personally attended the pre-motion conference hearing which triggered the deadline (he was observed there by Lofty's counsel). *See* Affirmation of Michael G. Sullivan, ¶¶ 3-4. In other words, despite Mr. Lehman's attempts to cryptically blame former counsel, Mr. Lehman was fully aware of the deadline himself. Supporting this, he has provided no explanation that claims otherwise or which would clarify how Mr. Ortiz's departure caused him to mis-remember the October 20 Order or the deadline. Failure to provide such a particularized explanation can be the basis for a finding of "willfulness" standing alone. *McNulty*, 137 F.3d at 738-39.

      Second, despite Lofted's claims to the contrary, there was nothing unexpected or abrupt about Mr. Ortiz withdrawing as counsel. Though Lofted claims that Mr. Ortiz withdrew "suddenly" on November 22, 2016, Mr. Lehman wrote to Lofty's counsel, *three weeks earlier*, on November 1, 2016, indicating that he was replacing Mr. Ortiz. Pequignot Decl., ¶ 7. Mr. Ortiz confirmed his intention to withdraw on or around November 3, 2016, in calls with Lofty's counsel. In fact, the only apparent reason Mr. Ortiz did not withdraw at that time was because Mr. Lehman did not have a certificate of good standing which was less than 11 months old (and therefore he could not replace Mr. Ortiz). Pequignot Decl., ¶ 8. To the extent that Mr. Lehman might reply that he was unable to act for need of obtaining a current certificate of good standing, Lofted always had counsel in Mr. David Kasell. In fact, Mr. Ortiz was permitted to withdraw on that basis. (ECF Nos. 33 and 34). Moreover, Mr. Lehman indicated as early as October 25th that he would initiate his own *pro hac vice* admission. Pequignot Decl., ¶ 6. Though Mr. Lehman apparently waited longer to order a certificate of good standing (*see* Lofted's November 29, 2016 letter (ECF No. 35), at 2 (stating: "I am in the process of securing a certificate of good standing from the state of Connecticut, . . . ."), this does not explain why Mr. Kasell did not file an answer on behalf of Mr. Lehman and Lofted. In short, to the extent that Lofted argues that Mr. Ortiz's "sudden" departure is the basis for the missed deadline, this reason remains essentially unexplained and is otherwise contradicted by Mr. Lehman's own written communications to Lofty and therefore should be rejected.

      Finally, Lofted's recent failure to follow Judge Pollak's December 14 Order also supports sanctioning Lofted for its dilatory conduct. (ECF No. 42; Pequignot Decl., ¶ 3). With this case already in default, Lofted should have been exercising heightened care to follow this Court's orders and the Federal Rules. Lofted's failure to do so, *and continued failure to file an answer as of the date of this letter*, evinces the lack of diligence being exercised by Lofted.

      The Prejudice to the Adversary Factor
      In the present case, Lofted and Lofty have actually been confused for one another in the marketplace (*See* Affirmation of Eric Myers ("Myers Decl."), ¶¶ 3-7), and this *actual* confusion is evidence of likelihood of confusion. *Plough, Inc. v. Kreis Laboratories*, 314 F.2d 635, 639 (9th Cir. 1963); however, only proof of a *likelihood* of confusion is required for trademark infringement. *See,*

---

[2] Many of the stated reasons for Mr. Ortiz's withdrawal are in doubt, as explained more fully in ECF. No. 38.

*e.g.,* 15 U.S.C. § 1114(1)(b) (establishing liability for conduct "likely" to cause confusion). Further, under Second Circuit law, trademark infringement leads to the non-compensable loss of a brand owner's reputation and goodwill. *See, e.g., New York City Triathlon, LLC v. NYC Triathlon Club, Inc.*, 704 F.Supp.2d 305, 343 (S.D.N.Y 2010) (finding that "[p]rospective loss of [plaintiff's] goodwill alone is sufficient to support a finding of irreparable harm" and "loss of control over one's reputation is neither calculable nor precisely compensable") (internal citations and quotation marks omitted). *See also Omega Importing Corp. v. Petri-Kine Camera Co.*, 451 F.2d 1190, 1195 (2d Cir. 1971) ("Where there is...such high probability of confusion, injury irreparable in the sense that it may not be fully compensable in damage almost inevitably follows.")

Lofted's default and other instances of delay have exposed Lofty to increased risk of continued confusion in the marketplace. Notably, at least one instance of actual confusion has come to light during the pendency of this litigation (on October 31st, *see* Myers Decl., ¶¶ 3-6), and this risk appears to be increasing as Lofted has recently expanded its sales to Lofty's home base in San Diego. Pequignot Decl., ¶ 9. Since trademark confusion itself causes irreparable harm, Lofted's continued expansion during the delays of this litigation magnifies the non-compensable prejudices to which Lofty is being subjected. This harm to Lofty, as well as the harm *to the public* which flows from Lofted's infringement, should be ended on Lofted's default, and as a sanction for Lofted other dilatory conduct. "[T]he public has an interest in not being deceived—in being assured that the mark it associates with a product is not attached to goods of unknown origin and quality." *New York City Triathlon*, 704 F.Supp.2d at 344.

### The "Meritorious Defense" Factor

In order to be granted relief from default, the defaulting party "must [] articulate a defense with a degree of specificity which directly relates that defense to the allegations set forth in the plaintiff's pleadings and raises a 'serious question' as to the validity of those allegations." *DeCurtis v. Upward Bound Int'l., Inc.*, 2012 WL 4561127, at *8 (S.D.N.Y. Sept. 27, 2012) (quoting *Salomon v. 1498 Third Realty Corp.*, 148 F.R.D. 127, 130 (S.D.N.Y. 1993)).

Here, Lofted's Declaratory Judgment complaint (ECF No. 1) alleges no perceptible defense to Lofty's claims of trademark infringement. In fact, Lofted's complaint does not identify Lofty's Federal trademark registrations *at all*.[3] Further, Lofted served its initial disclosures on September 30. 2016, but these disclosures also identify no defense or even hint at one. Pequignot Decl., ¶ 10 and Exhibit B thereto; *See also* Fed. R. Civ. P. 37(c)(1) (failure to disclose precludes later reliance). Finally, even though Lofted was already in default when answering Lofty's interrogatories, Lofted's answers - again - offer no defense to liability for Lofty's allegations of trademark infringement (other than generally alleging mark differences, as discussed below). According to Lofted, "Plaintiff has not yet decided yet which additional facts, documents, law or other information it will rely upon in its defense to Defendant's counterclaims at trial, *assuming that such a defense is needed as Defendant Lofty Coffee Inc. bears that burden of proof*." (emphasis added) *See* Lofted's Response to Interrogatory No. 3 (Pequignot Decl., ¶ 11 and Exhibit C thereto, at 3). In other words, even though Lofted initiated this litigation through its own Declaratory Judgment action, it appears that Lofted prefers to "sit and wait" to see if Lofty can meet its burden of proof. However, Lofted's strategy is flawed since Lofty's federally registered trademarks are presumed valid. *See* 15 U.S.C. § 1057(b); *Abercrombie & Fitch Co. v. Hunting World*, 537 F.2d 4, 11 (2nd Cir. 1976). That is, the burden on any validity issues is on Lofted, not Lofty. *Borinquen Biscuit Corp. v. M.V. Trading Corp.*, 443 F.3d 112, 117-18 (1st Cir. 2006) (Based on the presumption of validity, "[i]t follows, then, that under the

---

[3] While Lofted appears to try to make something of the fact that Lofty did not seek to dismiss Lofted's complaint (ECF No. 45, at 3), this decision was a calculated one. Had Lofty filed a motion to dismiss, Lofted might have filed an amended complaint, and Lofty might be facing a more intelligible Declaratory Judgment action.

Lanham Act, the effect of registration for a contestable mark is 'to shift the burden of proof from the plaintiff . . . to the defendant, who must introduce sufficient evidence to rebut the presumption of the plaintiff's right to [exclusive] use' through proof that the mark is merely descriptive" – before the burden of persuasion on secondary meaning reverts to the trademark registrant) (citation omitted).

To the extent Lofted claims that it "has relied on, and intends to rely upon, the obvious and plain difference in Plaintiff's marks and any marks used by Defendant" (Pequignot Decl., ¶ 11 and Exhibit C thereto, at 3), first, such non-particularized defenses are not enough. *DeCurtis*, 2012 WL 4561127, at *8; *See also Pecarsky v Galaxiworld.com Ltd.*, 249 F.3d 167, 173 (2d Cir. 2001) ("[A] defendant must present more than conclusory denials when attempting to show the existence of a meritorious defense.") Lofted could have - and should have - identified the alleged mark differences it intends to rely upon, but it did not. Second, Lofted's complaint and other interrogatory answers appear to indicate that Lofted is relying upon a comparison of Lofty's trademarks to Lofted's supposed logo. (ECF No. 1, at ¶¶ 21-23; Lofted's Responses to Interrogatories Nos. 1-3 (Pequignot Decl., ¶ 11 and Exhibit C thereto)). However, Lofted's apparent position ignores that Lofty has accused Lofted's usage of the typed words "Lofted" and "Lofted Coffee" alone (i.e., apart from any logo) as trademark infringement. *See* Defendant's Answer and Counterclaims, at pages 12-16 (ECF No. 7).[4] In other words, even if Lofted's non-particularized reliance on (as yet unidentified) "obvious and plain difference[s]" were enough, since Lofted continues to focus on a logo comparison, this is at most a partial defense, which is not enough to set aside default. *Enron Oil*, at 98 (stating that the test is whether "the evidence submitted, if proven at trial, would constitute a <u>complete</u> defense.") (emphasis added). Moreover, Lofted's logo-based defense is also - oddly - a defense to a claim that Lofty is not even asserting, that is, infringement of Lofty's logo by Lofted's logo. Finally, Lofted's generalized allegations that no confusion could occur (because of Lofted's sometimes "logo" use) is undermined by the fact that Lofted and Lofty have actually been confused in the market place (see discussion *supra*).

Equitable Factors and Other Sanctions

Lofted's multiple settlement offers reveal that it does not value its mark at more than $3,500. Lofted has repeatedly offered to sell its marks at this or similar prices, including with the most recent settlement offer made by Lofted on November 21, 2016.[5] Woodson Decl., ¶ 3. Lofted now presses this litigation forward which is resulting in expenses, for Lofty, far in excess of the apparent value of Lofted's trademarks. Given that Lofted has provided no satisfactory explanation for its default, its continued dilatory conduct, the failure to identify any defenses with particularity, and the ongoing harm to the public and to Lofty, default should be maintained and judgment entered for these additional equitable reasons. Where Lofted has identified no clear defense, and where confusion has already been demonstrated, there is simply no reason to force Lofty to continue with this litigation. "[C]ourts have an interest in expediting litigation, [and] abuses of process may be prevented by enforcing those defaults that arise from egregious or deliberate conduct." *American Alliance Insurance Co. v. Eagle Insurance Co.*, 92 F.3d 57, 61 (2d Cir. 1996). This Court has discretion to deny the motion to vacate, where here, the default was willful and the defaulting party has not presented a meritorious defense. *See, e.g., Commercial Bank of Kuwait v. Rafidain Bank*, 15 F.3d 238, 244 (2d Cir.1994).

---

[4] Lofted has essentially refused to answer certain of Lofty's interrogatories falsely claiming that Lofted never uses the terms "Lofted" or "Lofted Coffee" alone, without accompanying artwork (which it tries to frame as a logo). However, this is simply not the case as a review of Lofted's domain name and e-commerce portal, for instance, immediately reveals otherwise. *See* Affirmation of Sarah Woodson ("Woodson Decl."), ¶¶ 4-12.

[5] It is a mystery why Lofted has withdrawn multiple offers which it initiated and which Lofty was willing to accept.

Conclusion

For each of the above reasons, denial of Lofted's motion to set aside the default is requested. If default is set aside, alternative sanctions in the form of attorney fees and expenses incurred requesting and defending the default should be awarded. *See, e.g. Parks v. Discount Box and Pallet, Inc.*, No. 5:12cv081, at 14-15 (W.D. Va. February 22, 2013) (awarding as an alternative sanction the costs and attorney fees incurred by the plaintiff in pursuing default, including the costs and attorney fees for briefing and submitting an affidavit detailing the defendant's delay) (*citing Flora v. JPS Elastomerics*, No.4:08cv31, 2009 WL 1956495, at *5 (W.D. Va. July 7, 2009) (imposing the sanction of costs and attorney fees)).

Respectfully submitted,

Dated:  January 4, 2017

/s/ Matthew A. Pequignot
Matthew A. Pequignot
*Admitted Pro Hac Vice*
PEQUIGNOT + MYERS
90 North Coast Highway 101
Suite 315
Encinitas, CA 92024
Phone: 202-328-1200
Facsimile:  202-328-2219
mpequignot@pmiplaw.com

Michael G. Sullivan
PEQUIGNOT + MYERS
62 Valley Road
Westport, CT 06880
Phone: 202-674-4900
Facsimile:  202-328-2219
msullivan@pmiplaw.com

*Attorneys for Defendant Lofty Coffee, Inc.*